IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RONALD W. HOLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV508 |
| | ) | |
| v. | ) | |
| | ) | |
| DEBT RELIEF OF AMERICA and MARK WILLIAMS, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendant Debt Relief of America's ("DRA") motion to stay the proceedings and to compel arbitration, or alternatively, motion to dismiss in favor of arbitration, Filing No. 12. This action was brought as a class action[1] concerning alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 *et seq.*), the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601 *et seq.*), and the Nebraska Deceptive Trade Practices Act (Neb. Rev. Stat. § 87-301 *et seq.*), attributed to a debt relief program's purported fraudulent behavior and hidden and excessive fees. Jurisdiction is proper under 28 U.S.C. § 1331, providing this court original jurisdiction over all civil actions arising under the Constitution and laws of the United States, including 18 U.S.C. § 1964, permitting this court jurisdiction to prevent and restrain violations of RICO, and 28 U.S.C. § 1367, allowing this court supplemental jurisdiction over related claims that form part of the same case or controversy.

---

[1] Plaintiff Ronald W. Hollins brought this suit as a consumer and as the class representative on behalf of himself and all others similarly situated. At this time, the class has not been certified by the magistrate judge. Based on DRA's advertising in Nebraska, Hollins estimates a minimum of 100 members comprise the class. Filing No. 19.

DRA, a Texas corporation, with its president, defendant Mark Williams ("Williams"), offers a program to help consumers eliminate their debt by negotiating reduced payoffs in settlement of the debts. In spring 2005, DRA began advertising its debt relief program in the Omaha, Nebraska, area. Plaintiff Ronald W. Hollins ("Hollins"), a resident of LaVista, Nebraska, responded to this advertising and contacted DRA. The parties agree that on June 7, 2005, Hollins entered into a Client Negotiation Agreement ("Agreement") with DRA that includes an arbitration provision with a Texas choice-of-law provision. Filing No. 12; Filing No. 14, pp. 6-7. The arbitration provision reads as follows:

> 11. Arbitration or Dispute: Client agrees that any claim or dispute by either Client or DRA against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to this Agreement shall be resolved by binding arbitration under the auspices of the National Arbitration Forum (NAF) under the Code Procedure in effect at the time the claim is filed. If the NAF is unable, or unwilling to act as arbitrator, another independent arbitration organization may be substituted at DRA's discretion. Client understands that the result of this arbitration clause is that claims cannot be litigated in court. Venue for such arbitration will be held in the county and city of Dallas, Texas.
>
> This agreement is entered into at Dallas, Texas and venue of all disputes concerning this agreement shall be in Dallas, Dallas County, Texas. The parties agree that Texas law shall apply to the interpretation of this agreement. If any portion of this agreement shall be held to be contrary to law or unenforceable, the remaining portions of this agreement shall not be affected.

Filing No. 14, p. 7.

Hollins maintains that he received the Agreement, signed it, and immediately returned it by fax. Hollins claims the arbitration clause was unnoticeable, buried in the fine print of an illegible fax, and was not pointed out to him by anyone at DRA. Hollins alleges that he paid DRA $4,719.84 through a series of wire transfers from his bank account, and although DRA promised to manage his debts, defendants never took any action to assist

Hollins or contact his creditors. Hollins maintains that on the advice of DRA, he ignored his creditors who in turn placed his accounts in collection. Furthermore, Hollins asserts that he filed bankruptcy because of DRA's alleged misrepresentations. Hollins brought suit in this court requesting certification of a class consisting of all Nebraska residents who paid any amount for DRA's debt relief services within four years prior to the filing of this suit. Pursuant to 18 U.S.C. §1962(a), Hollins alleges that DRA engaged in a pattern of racketeering activities over a ten-year period, and committed the requisite predicate offenses of mail and wire fraud (Claim I). Hollins requests that this court enter judgment against the defendants for actual damages, prejudgment interest, attorney fees, costs, treble damages, an order enjoining defendants from further engaging in the activities alleged in Hollins' lawsuit, and any other relief the court deems appropriate.

Hollins further alleges that defendants' standard practices are violative of the Nebraska Deceptive Trade Practices Act, Neb. Rev. Stat § 87-302 (2006) (Claim II). Specifically, Hollins contends that DRA deceptively represented the benefits of its services and engaged in the unauthorized practice of law. Hollins requests that this court enter judgment in both his and the class's favor and preliminarily and permanently enjoin the defendants from soliciting and selling its debt relief program in the state of Nebraska. Additionally, Hollins requests that the court award actual damages to himself and the class members, award attorney fees and costs, and any other relief the court deems appropriate.

Pursuant to the Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq.*, Hollins maintains that defendants are persons engaged in trade or commerce, and defendants' unfair and deceptive practices and unauthorized practice of law caused Hollins and the class members financial injury (Claim III). As such, Hollins requests that this court certify

the class[2] and enter judgment for actual damages, including disgorgement and refund of the amounts paid to DRA, attorney fees and costs, statutory damages, and any other relief the court deems appropriate.

Defendants thereafter brought this motion to stay, claiming that Hollins' claims arise from and relate to the Agreement between Hollins and DRA, and requesting that the court stay Hollins' claims and order that the claims be submitted to arbitration, or alternatively, dismiss Hollins' claims in favor of arbitration.  Filing No. 12.  Defendants argue that because they entered into a contract as parties from different states, they are subject to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, which preempts any inconsistent state statute.  Defendants contend that Hollins did not read the contract and he is now asking the court to find the arbitration clause unenforceable.  Furthermore, defendants ask that this court enforce the choice-of-law provision of the Agreement and apply Texas law to determine the validity of the arbitration clause.  Defendants claim that the arbitration clause is neither substantively nor procedurally unconscionable, and contention about arbitration being cost prohibitive is speculative.  According to defendants, pursuant to National Arbitration Foundation ("NAF") rules, all types of remedies and relief available in court are available in arbitration, and Hollins' claims are arbitrable under a valid and enforceable arbitration clause.

Hollins responded to defendants' motion to dismiss and stated that the Agreement is a standard, preprinted form of poor quality, with small, illegible print that is difficult to read, and that Hollins did not knowingly or voluntarily agree to the arbitration clause.

---

[2]*See supra* footnote 1.

Hollins contends that the arbitration clause is unenforceable, as Hollins did not, as the clause states, enter into the Agreement in Dallas, Texas; rather, he signed the form in Nebraska and faxed it to DRA.

Hollins argues the FAA does not preclude an examination into whether the arbitration agreement at issue is unconscionable under state law.  Neb. Rev. Stat. §25-2602.2 reads as follows: "The following statement shall appear in capitalized, underlined type adjoining the signature block of any standardized agreement in which binding arbitration is the sole remedy for dispute resolution: THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."  Neb. Rev. Stat. § 25-2602.02 (2006).  Hollins maintains that § 25-2602.02 precludes arbitration of Hollins' claims because the arbitration clause provided for in the Agreement does not contain the required language.  Hollins contends that Nebraska law applies in this case as enforceability of arbitration agreements is a matter of state contract law, and Nebraska law concerning arbitration agreements is not preempted.

Hollins further argues that the prohibitive costs of arbitration make arbitration unconscionable, and the arbitration clause is a procedurally and substantively unconscionable contract of adhesion.  Alternatively, Hollins argues that even if the arbitration provision is valid,  Hollins' statutory claims are not arbitrable and he requests injunctive relief that is not adequately addressable through arbitration.  Hollins maintains that because NAF rules do not provide for class actions, the class members will have to seek leave to intervene in Hollins' action, and joinder of an estimated "hundreds if not thousands" of class members is impossible and impracticable.  Filing No. 19.  According

5

to Hollins, the confidentiality rules of arbitration will negatively impact class members, as opposed to a class action.

**Discussion**

Congress enacted the Federal Arbitration Act ("FAA") to reverse judicial hostility to arbitration agreements and place arbitration agreements on equal footing with other contracts. *Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). The FAA effectively created a body of "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the FAA." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA applies to written arbitration clauses in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2 (2006). Section 4 of the FAA provides that

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (2006).

The FAA "preempts all state laws that reflect a policy disfavoring arbitration and which are designed specifically to limit arbitration." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). A party seeking to invalidate the arbitration agreement bears the burden of demonstrating that Congress intended to foreclose arbitration of the claims at issue. *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an

6

allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Suburban Leisure Ctr., Inc. v. AMF Bowling Prods.*, 468 F.3d 523, 526 (8th Cir. 2006). Issues outside the court's scope of review remain for the arbitrator to decide in the first instance. *Faber*, 367 F.3d at 1052.

Before parties may be compelled to arbitrate under the FAA, a court must first determine whether a valid arbitration agreement exists, and second, whether the dispute falls within the terms of that agreement. *EEOC v. Woodmen of the World Life Ins. Soc'y*, 2007 U.S. App. LEXIS 5528, *7 (8th Cir. 2007); *Houlihan v. Offerman & Co.*, 31 F.3d 692, 694-95 (8th Cir. 1994). The court's task is limited to defining the nature of the forum in which a dispute will be resolved; thus, the court must not address matters other than "the parties' claims that the arbitration agreement is invalid or that it does not apply to the dispute with respect to which arbitration is sought." *Faber*, 367 F.3d at 1052; *Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.*, 334 F.3d 721, 727 (8th Cir. 2003). State contract law governs the validity of an arbitration agreement. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995); *Faber*, 367 F.3d at 1052. To determine whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996).

Although the Agreement states that "Texas law shall apply to the interpretation of this [A]greement[,]" the parties dispute whether Texas or Nebraska law governs. Hollins contends that because he signed the Agreement in Nebraska, Nebraska law controls. The

court finds that application of either Texas or Nebraska law to determine the validity and enforcement of the Agreement yields the same result.

In the state of Nebraska, arbitration is purely a matter of state contract law. *Kramer v. Eagle Eye Home Inspections, Inc.*, 716 N.W.2d 749, 762 (Neb. Ct. App. 2006). Nebraska law favors arbitration agreements and specifically states: "A written agreement to submit any existing controversy to arbitration is valid, enforceable, and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract." Neb. Rev. Stat. § 25-2602.01(a). The statute further states that such an agreement is valid unless there are grounds in law or equity for the revocation of the contract, assuming the parties entered into the agreement voluntarily and willingly. Neb. Rev. Stat. § 25-2602.01(b). Thus, Nebraska favors enforcement of agreements so long as the contract is not unconscionable and does not violate public policy. *Jones v. Burr*, 389 N.W.2d 289, 296 (Neb. 1986).

An unconscionable agreement is "[a]n agreement that no promisor with any sense, and not under a delusion, would make, and that no honest and fair promisee would accept." Black's Law Dictionary 75 (8th ed. 2004). Nebraska law defines "unconscionable" as manifestly unfair or inequitable. *EEOC v. Woodmen of the World Life Ins. Soc'y*, 2007 U.S. App. LEXIS 5528, *9 (8th Cir. 2007); *Myers v. Neb. Inv. Council*, 724 N.W.2d 776, 799 (Neb. 2006). Nebraska courts evaluate both substantive and procedural unconscionability. A contract is substantively unconscionable if the terms are grossly unfair under the circumstances in existence at the time the parties entered the contract. *Woodmen of the World*, 2007 U.S. App. LEXIS at *9. Procedural unconscionability considers "the disparity

8

in respective bargaining positions of parties to a contract." *Id.* (*quoting Myers*, 724 N.W.2d at 799 (internal quotations omitted)). "Unconscionability is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Parizek v. Roncalli Catholic High Sch.*, 655 N.W.2d 404, 408 (Neb. Ct. App. 2002). A contract of adhesion exists where the party with superior bargaining power drafts a standardized form of agreement and presents it to the other party on a take-it or leave-it basis. *Ronwin v. Smith Barney, Harris Upham & Co.*, 807 F. Supp. 87, 89 (D. Neb. 1992). Under Nebraska law, adhesion contracts are not automatically unconscionable or void. *Woodmen of the World*, 2007 U.S. App. LEXIS at *9.

As with the state of Nebraska, to determine the contractual validity of an arbitration agreement, Texas courts apply ordinary state-law principles that govern the formation of contracts. *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 301 (5th Cir. 2004) (applying Texas law). Under Texas law, a contract of adhesion exists where the contracting parties do not have equal bargaining power, standard forms are offered on the basis of "accept this or get nothing," and the non-drafting party is compelled to sign without any real freedom of contract. *Gonzalez v. County of Hidalgo*, 489 F.2d 1043, 1050 (5th Cir. 1973) (applying Texas law). The unconscionability doctrine is designed to minimize the allocation of risks due to superior bargaining power and prevent oppression and unfair surprise. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001). The party seeking to avoid the

9

arbitration provision bears the burden of proving the provision unconscionable. *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 198 (Tex. App. 2003).

Texas law provides that to prevail on an unconscionability argument, a party must prove both substantive and procedural unconscionability. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002); *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. App. 1975). The basic test for substantive unconscionability is whether the arbitration clause "involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001); *In re Marriage of Smith*, 115 S.W.3d 126, 135 (Tex. App. 2003). Procedural unconscionability exists where the evidence demonstrates a seller's overreaching or sharp practices in combination with the buyer's ignorance or inexperience. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Electric Corp.*, 844 F.2d 1174, 1184 (5th Cir. 1988) (applying Texas law).

In the present case, Hollins, an unsophisticated consumer in debt, argues that the Agreement was presented to him in a "take it or leave it fashion" and that he had "no meaningful choice" but to sign and return the document. Hollins contends the arbitration agreement is void because of the nature and appearance of the Agreement, the placement of the arbitration provision in the Agreement, the failure of DRA to inform him of the Agreement's inclusion of an arbitration provision, and that Rule 19 of the NAF Code of Procedures deny him and other Nebraska residents the right to bring this case as a class action if this court compels arbitration. *See* Filing No. 20, Attachment 4. Hollins maintains this is so because the arbitration clause in the agreement is silent as to class actions and

10

NAF rules do not contain an adequate mechanism for class claims.  Hollins also contends the prohibitive costs of arbitration present a hardship and are unconscionable.

The arbitration provision forcing Hollins, a Nebraska resident, to arbitrate potential disputes with DRA, a Texas corporation, is harsh and one-sided.  If this court upheld the validity of a standard, boilerplate arbitration clause in an otherwise standard, pre-printed contract of adhesion, this court would, in effect, permit DRA to establish minimum contacts in the state of Nebraska, conduct business with financially impaired Nebraska residents, take their money, and then force those residents to resolve litigious matters in Dallas, Texas.  Hollins is not a sophisticated businessman with any kind of commercial background; the court is unwilling to conclude that at the time of entering into a contract with DRA, Hollins could negotiate the inclusion of the arbitration clause.  The court further finds that the combination of Hollins' ignorance and inexperience with contract negotiation together with DRA's alleged "take it or leave it" overreaching demonstrates unconscionability.  A provision requiring a then potentially bankrupt Nebraska resident to travel to Texas to arbitrate a dispute that allegedly caused him to claim bankruptcy is arguably a calculated decision by the defendant to insulate itself from its malfeasance.  Such an agreement, in the court's opinion, is unconscionable.  Therefore, applying both Texas and Nebraska law, the court concludes the arbitration provision at issue is both procedurally and substantively unconscionable, rendering the arbitration provision invalid and unenforceable.

Furthermore, the court finds that sentences in the arbitration provision in the Agreement may not be viewed in isolation.  The last line of the arbitration provision states

11

that "[i]f any portion of this agreement shall be held to be contrary to law or unenforceable, the remaining portions of this agreement shall not be affected." Filing No. 14, p. 7, ¶ 1. The court finds that the provision's wording requires that the arbitration provision be evaluated as a whole; the provision may not be fragmented, and the provision language does not afford the court the option of requiring arbitration in an alternative venue. Having found the arbitration unconscionable, and therefore, unenforceable, the court has no choice but to strike the arbitration provision in its entirety.

ACCORDINGLY, IT IS ORDERED that defendant Debt Relief of America's motion to stay the proceedings and to compel arbitration, or in the alternative, motion to dismiss, Filing No. 12, is denied.

DATED this 21st day of March, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief United States District Judge